**FILED**

SEP 26 2018 *YB*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 515 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | MAGISTRATE JUDGE GILBERT |
| | ) | Violations: Title 18, United States Code, |
| | ) | Sections 1341, 1343, 1956(h), and 1957 |
| | ) | |
| BABAJAN KHOSHABE  and | ) | |
| ANTHONY KHOSHABE | ) | **Superseding Indictment** |
| | ) | |

## COUNT ONE

The SPECIAL AUGUST 2017 GRAND JURY charges:

1.     At times material to this superseding indictment:

a.     Albert Rossini and defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE operated purported real estate investment and property management businesses in Lincolnwood, Illinois.

b.     Thomas W. Murphy was a licensed Illinois attorney operating a law practice in Chicago, Illinois.

c.     For the purpose of carrying out the activities of the aforementioned purported real estate and property management businesses, Rossini, Murphy, and defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE established or caused to be established various corporate entities located at 3924 West Devon Street, Lincolnwood, Illinois, including:

1

      i.      Devon Street Investments, Ltd., of which Rossini was the President and sole shareholder;

      ii.      Reliant Management, Inc., of which defendant ANTHONY KHOSHABE was the President and sole shareholder; and

      iii.      Devon Street Management Company, of which Murphy was the registered agent.

2.      Beginning no later than in or around May 2011, and continuing until at least 2014, at Lincolnwood, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, along with Albert Rossini and Thomas W. Murphy, devised, intended to devise, and participated in a scheme to defraud investors and prospective investors, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3.      It was part of the scheme that defendants fraudulently induced at least 25 victims to invest more than $7,000,000 by falsely and fraudulently representing to the victims that (i) investors' funds would be used to acquire mortgage notes on apartment buildings in foreclosure, (ii) investors would receive income in the form of rent paid by the occupants while defendants pursued foreclosure, and (iii) investors would receive title to the property once the foreclosure process concluded. In fact,

2

defendants did not acquire the promised interests in the identified properties, used the victims' funds to make *Ponzi*-type payments to other investors, and converted the remaining funds to their own benefit.

4.     It was further part of the scheme that Rossini and defendant BABAJAN KHOSHABE solicited individuals to participate in a purported investment program through their company, Devon Street Investments ("Devon"). To induce victims to invest, Rossini and BABAJAN KHOSHABE knowingly made a number of materially false and fraudulent representations and promises, including the following:

a.     That Devon was selling mortgage notes relating to specifically identified properties to investors. In truth, as defendants knew, Devon did not own or otherwise have an interest in the mortgage notes identified to investors.

b.     That Reliant Management ("Reliant"), which was run by defendant ANTHONY KHOSHABE, would manage the properties underlying the mortgage notes and forward to investors the rents collected from the properties each month. In truth, as defendants knew, no one affiliated with Devon or Reliant, including defendant ANTHONY KHOSHABE, performed any property management services at, or collected rents from, the properties underlying the mortgage notes being sold to investors.

c.     That the payments Reliant would make to investors each month would be derived from rents collected at the properties. In truth, as defendants knew, the payments subsequently made to investors were derived from funds defendants had collected from other investors.

3

d. That Devon, through Murphy, as attorney for Devon and its investors, would actively pursue foreclosure for each of the investors' properties and thereafter cause deeds to the properties to be transferred to the investors. In truth, as defendants knew, neither Murphy nor anyone affiliated with Devon pursued foreclosure of the properties, and, with limited exceptions, no deeds were transferred to investors.

5. It was further part of the scheme that when an investor provided funds for the purported purchase of a mortgage note, Murphy prepared for the investor, and Rossini, BABAJAN KHOSHABE, or on at least one occasion ANTHONY KHOSHABE, presented to the investor, a document called a "Guaranty Agreement," which made further materially false and fraudulent representations, including the following:

a. That Rossini had "obtained written assignments of the right to acquire … the existing notes and mortgages from the lender." In truth, as defendants knew, no such written assignments had been obtained;

b. That the funds provided by the investors would "be used to purchase the property and/or notes and mortgages." In truth, as defendants knew, with limited exceptions, investors' funds were not used to purchase the properties or mortgage notes; and

c. That Rossini would "cause the foreclosure process to be completed" and thereafter "have the title to the property deeded to [the investor] or as [the investor] shall direct. In truth, as defendants knew, neither Rossini nor

4

anyone else affiliated with Devon pursued foreclosure proceedings for the investors' properties, nor did they cause title to the properties to be transferred to the investors.

6.     It was further part of the scheme that, in order to attract and retain investors and to falsely and fraudulently represent that their mortgage note scheme was a legitimate investment, Rossini, Murphy, and defendant ANTHONY KHOSHABE used funds obtained from investors to make *Ponzi*-type payments to other investors. More specifically, Rossini, Murphy, and defendant ANTHONY KHOSHABE made payments to investors that were falsely and fraudulently represented to be rental income derived from the investment properties, when, as defendants knew, the source of the payments was funds received directly from other investors.

7.     It was further part of the scheme that Rossini and defendant ANTHONY KHOSHABE at times used investor funds to make payments to third-party service providers and vendors in order to create the false appearance that Devon and Reliant were operating as legitimate real estate businesses.

8.     It was further part of the scheme that Rossini and defendant BABAJAN KHOSHABE used investor funds to pay commissions to some investors to induce them to refer additional victims to invest in defendants' mortgage note scheme.

9.     It was further part of the scheme that, after defendants ceased making payments to investors as promised, in order to retain the investors' funds and to prevent them from taking adverse action:

5

    a.    Rossini and defendant BABAJAN KHOSHABE falsely and fraudulently represented to investors that they intended to refund their money but, for various false and fabricated reasons, did not have funds available to do so;

    b.    Rossini and defendant BABAJAN KHOSHABE fraudulently discouraged investors from complaining to law enforcement or taking legal action based on allegations of fraud;

    c.    Rossini and defendant BABAJAN KHOSHABE filed a sham lawsuit against Murphy; and

    d.    Rossini and defendant BABAJAN KHOSHABE fraudulently filed liens which they knew were invalid, and falsely and fraudulently represented to investors that the liens would protect their interest in the properties.

10.    It was further part of the scheme that Rossini, Murphy, and defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE misappropriated investors' funds and converted them to their own benefit. Investor funds were deposited into Murphy's personal checking account, where they were used for various purposes other than those represented to investors, such as:

    a.    Making *Ponzi*-type payments in which a portion the investors' own money was repaid to them as purported rent payments;

    b.    Paying expenses related to maintaining and concealing the scheme;

    c.    Withdrawing funds as cash; and

d.    Distributing investor funds directly to Rossini, Murphy, and defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE, for their personal use and benefit.

11.    It was further part of the scheme that, from time to time, after receiving investors' funds, Rossini and defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE re-directed a portion of those funds back to Murphy in order to falsely make it appear that they were themselves investing in mortgage notes.

12.    It was further part of the scheme that defendants concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

13.    As a result of the scheme, defendants caused at least 25 victims to suffer losses of approximately $4,829,000.

14.    On or about June 14, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent by Rossini in Illinois to Victim NM in Arizona;

In violation of Title 18, United States Code, Section 1343.

7

**COUNT TWO**

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.    On or about July 16, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent by Rossini in Illinois to Victim AP2 that was routed through a computer server in Virginia;

In violation of Title 18, United States Code, Section 1343.

8

## **COUNT THREE**

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2. On or about July 24, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate Automated Clearing House ("ACH") transaction from Devon Street Management to Victim KK through the Federal Reserve System in the amount of approximately $9,315;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.    On or about July 24, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be sent by Fed Ex, a commercial interstate carrier, according to the directions thereon, a package from Rossini in Illinois to Victim AK in Arizona, containing an invoice from Devon Street Management and a $3,663 money order;

In violation of Title 18, United States Code, Section 1341.

10

## COUNT FIVE

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.     On or about August 22, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be sent by Fed Ex, a commercial interstate carrier, according to the directions thereon, a package from Rossini in Illinois to Victim AK in Arizona, containing a $3,663 check;

In violation of Title 18, United States Code, Section 1341.

## COUNT SIX

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.     On or about September 25, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate Automated Clearing House ("ACH") transaction from Devon Street Management to Victim KK through the Federal Reserve System in the amount of approximately $9,315;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.     On or about November 13, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and<br>
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be sent by Fed Ex, a commercial interstate carrier, according to the directions thereon, a package from Rossini in Illinois to Victim AK in Arizona, containing a $3,663 check;

In violation of Title 18, United States Code, Section 1341.

## **COUNT EIGHT**

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.     On or about November 20, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate Automated Clearing House ("ACH") transaction from Devon Street Management to Victim AP1 through the Federal Reserve System in the amount of approximately $7,398;

In violation of Title 18, United States Code, Section 1343.

## COUNT NINE

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.      On or about April 13, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE,

defendant herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent by Rossini in Illinois to Victim NY that was routed through a computer server in California;

In violation of Title 18, United States Code, Section 1343.

## **COUNT TEN**

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.      On or about May 22, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE,

defendant herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent by Rossini in Illinois to Victim NY that was routed through a computer server in California;

In violation of Title 18, United States Code, Section 1343.

## **COUNT ELEVEN**

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 13 of Count One of this superseding indictment are incorporated here.

2.    On or about March 28, 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

### BABAJAN KHOSHABE,

defendant herein, and others known to the Grand Jury, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email sent by Rossini in Illinois to Victim NY that was routed through a computer server in California;

In violation of Title 18, United States Code, Section 1343.

17

## COUNT TWELVE

The SPECIAL AUGUST 2017 GRAND JURY further charges:

1.     Paragraph 1 of Count One of this superseding indictment is incorporated here.

2.     At times material: JP Morgan Chase Bank ("Chase"), Bank of America ("BOA"), Wells Fargo Bank ("Wells Fargo"), MB Financial Bank ("MB Financial"), and Austin Bank of Chicago ("ABC Bank") were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

3.     Beginning no later than in or around mid-2011, and continuing until at least in or around August 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, did conspire with each other and with others known and unknown to the grand jury, to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, in violation of United States Code, Section 1957;

18

4.     It was part of the conspiracy that between approximately May 2011 and April 2013, defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE regularly received funds they knew were derived from victims of the Devon Street investment fraud scheme alleged in Count One ("scheme funds"). More specifically:

a.     BABAJAN KHOSHABE received a total of at least approximately 25 payments derived from investor funds, paid to him either by Thomas Murphy or directly by investors; and

b.     ANTHONY KHOSHABE received a total of at least approximately 82 payments derived from investor funds paid to him by Murphy or Rossini and approximately 33 payments derived from investor funds that ANTHONY KHOSHABE paid to himself in his capacity as the President of Reliant Management.

5.     It was further part of the conspiracy that defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE deposited, or caused to be deposited, into various bank accounts ("the Khoshabe Deposit Accounts") at least approximately $1.5 million in scheme funds. More specifically:

a.     between December 2011 and April 2013, Chase Checking Account Ending in x5770 ("the Chase x5770 Account"), held in the name of "Anthony E. Khoshabe," with ANTHONY KHOSHABE as the sole signor, received scheme funds payable to ANTHONY KHOSHABE and scheme funds payable to BABAJAN KHOSHABE totaling approximately $399,000;

19

b.      between January 2012 and May 2012, Chase Savings Account Ending in x5672 ("the Chase x5672 Account"), held in the name of "Anthony E. Khoshabe, POD Babajan Khoshabe," with ANTHONY KHOSHABE as the sole signor, received scheme funds payable to ANTHONY KHOSHABE and scheme funds payable to BABAJAN KHOSHABE totaling approximately $128,166;

c.      between May 2011 and March 2012, BOA Checking Account Ending in x8725 ("the BOA x8725 Account"), held in the name of "Anthony E. Khoshabe ITF Babajan Khoshabe," with ANTHONY KHOSHABE as the sole signor, received scheme funds payable to ANTHONY KHOSHABE and scheme funds payable to BABAJAN KHOSHABE totaling approximately $373,000;

d.      between January 2012 and May 2012, BOA Savings Account Ending in x2375 ("the BOA x2375 Account"), held in the name of "Anthony E. Khoshabe, ITF Babajan Khoshabe," with ANTHONY KHOSHABE as the sole signor, received scheme funds payable to ANTHONY KHOSHABE totaling approximately $246,000;

e.      between February 2012 and May 2012, Wells Fargo Savings Account Ending in x6999 ("the Wells Fargo x6999 Account"), held in the name of "Anthony E. Khoshabe, POD Babajan Khoshabe," with ANTHONY KHOSHABE as the sole signor, received scheme funds payable to ANTHONY KHOSHABE totaling approximately $269,000; and

f.      between July 2012 and October 2012, Chase Savings Account Ending in x5411 ("the Chase x5411 Account"), held in the name of "Babajan Khoshabe," with BABAJAN KHOSHABE as the sole signor, received scheme funds payable to BABAJAN KHOSHABE totaling approximately $93,000.

6.      It was further part of the conspiracy that between at least May 2012 and August 2015, defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE coordinated to use the scheme funds held in the Khoshabe Deposit Accounts to transfer nominal ownership of those funds between one another and ultimately to acquire assets in each of their names. More specifically:

a.      on or about June 9, 2012, ANTHONY KHOSHABE and BABAJAN KHOSHABE transferred, or caused to be transferred, a total of approximately $793,434 from the Wells Fargo x6999 Account, the BOA x2375 Account, and the BOA x8725 Account, all three of which accounts were then held in ANTHONY KHOSHABE's name, with BABAJAN KHOSHABE as a named beneficiary, into two new accounts at BOA and Wells Fargo ("the BOA x5413 Account" and "the WF x8113 Account," respectively), which were held in BABAJAN KHOSHABE's name, with ANTHONY KHOSHABE as a named beneficiary;

b.      also on or about June 9, 2012, ANTHONY KHOSHABE and BABAJAN KHOSHABE caused BABAJAN KHOSHABE's name to be added to the Chase x5672 Account as a joint account holder and signor with ANTHONY KHOSHABE;

21

c.      on or about August 30, 2012, ANTHONY KHOSHABE caused a wire transfer of approximately $181,641 to be issued from the Chase x5770 Account to Title Company A for the purchase of a rent-generating real property in Skokie, Illinois ("Skokie Property 1");

d.      on or about November 12, 2012, ANTHONY KHOSABE issued a check from the Chase x5770 Account in the amount of $19,000 payable to Car Dealer A towards the purchase of a 2013 Audi A5;

e.      on or about August 20, 2013, ANTHONY KHOSABE transferred, or caused to be transferred, approximately $604,051 from the Chase x5672 Account to the Chase x5411 Account, which funds were then transferred back to the Chase x5672 Account;

f.      on or about January 16, 2014, BABAJAN KHOSHABE and ANTHONY KHOSHABE used approximately $500,000 of the funds then being held in BOA x5413 Account and the WF x8113 Account to open two $250,000 Certificates of Deposit ("CDs") in ANTHONY KHOSHOBE's name ("CD #16463" and "CD #16464") with ABC Bank;

g.      on or about January 17, 2014, ANTHONY KHOSHABE and BABAJAN KHOSHABE transferred, or caused to be transferred approximately $600,000 from the Chase x5672 Account, which was then held in the name of "Anthony E. Khoshabe and Babajan Khoshabe, JTWROS," with ANTHONY KHOSHABE and BABAJAN KHOSHABE as signors, into a new account at Chase

22

Bank ("the Chase x7162 Account"), which was held solely in the name of "Anthony E. Khoshabe," with ANTHONY KHOSHABE as the sole signor;

      h.    also on or about January 17, 2014, ANTHONY KHOSABE purchased a Chase cashier's check payable to BABAJAN KHOSHABE in the amount of $24,370, funded by a $20,000 withdrawal from the Chase x5770 Account and $4,370 withdrawal from the Chase x5672 Account, which cashier's check BABAJAN KHOSABE subsequently deposited into the WF x8113 Account;

      i.    on or about February 27, 2014, BABAJAN KHOSHABE and ANTHONY KHOSHABE transferred, or caused to be transferred, $200,000 from the WF x8113 Account into a new account at ABC Bank ("the ABC x5791 Account"), held jointly in BABAJAN KHOSHABE's and ANTHONY KHOSHABE's names;

      j.    on or about March 10, 2014, BABAJAN KHOSHABE and ANTHONY KHOSHABE used $200,000 from the ABC x5791 Account to open a $200,000 Certificate of Deposit ("CD 16513"), which was held jointly in names of ANTHONY KHOSHABE and BABAJAN KHOSHABE, with ABC Bank;

      k.    on or about May 15, 2014, BABAJAN KHOSHABE and ANTHONY KHOSHABE used CD #16463 and CD #16464 as collateral to fully secure a loan from ABC Bank in the amount of $295,000 ("ABC Bank Loan #22164") and caused these loan proceeds to be wired to Title Company B so that ANTHONY KHOSHABE could purchase a condominium located at 9725 Woods Drive, Unit 1417, Skokie, Illinois (Skokie Property 2);

l.     on or about September 19, 2014, ANTHONY KHOSHABE purchased a $14,000 cashier's check from the Chase x7162 Account that was payable to Business A, a jeweler, towards ANTHONY KHOSHABE's purchase of a two-carat diamond ring priced at $19,000;

m.     on or about October 2, 2014, ANTHONY KHOSHABE transferred approximately $29,900 from the Chase x7162 Account to Individual A for ANTHONY KHOSHABE's purchase of a 2012 Jeep Cherokee;

n.     on or about March 20, 2015, ANTHONY KHOSHABE caused approximately $256,267 to be wired from the Chase x7162 Account to Title Company C so that ANTHONY KHOSHABE could purchase a condominium located at 9725 Woods Drive, Unit 1101, Skokie, Illinois ("Skokie Property 3");

o.     It was further part of the conspiracy that on or about April 29, 2015, ANTHONY KHOSHABE sold Skokie Property 1 and caused sale proceeds of approximately $245,000 to be paid to ABC Bank to pay down the $295,000 balance on ABC Bank Loan #22164;

p.     on or about July 9, 2015, ANTHONY KHOSHABE and BABAJAN KHOSHABE transferred via cashier's check approximately $141,483 from the Chase x7162 Account to Bank of America to pay off the mortgage loan on BABAJAN KHOSHABE's personal residence;

q.     also on or about July 9, 2015, ANTHONY KOSHABE transferred via cashier's check from the Chase x7162 Account to BABAJAN KHOSHABE

24

approximately $33,000, which BABAJAN KHOSHABE then deposited into a separate personal checking account and used those funds to purchase a 2012 Ford Expedition from Car Dealer B for $32,639 on July 10, 2015;

   r. on or about July 9, 2015, BABAJAN KHOSHABE and ANTHONY KHOSHABE used ABC Bank CD #16513 as collateral to fully secure a loan from ABC Bank in the amount of $40,000, the proceeds of which BABAJAN KHOSHABE then deposited into a new bank account at MB Financial Bank ("the MB x0508 Account") in BABAJAN KHOSHABE's name with BABAJAN KHOSHABE as the sole signor;

   s. on or about July 16, 2015, BABAJAN KHOSHABE and ANTHONY KOSHABE used ABC Bank CD #16463 and ABC Bank CD #16464 as collateral to fully secure a loan from ABC Bank in the amount of $270,000 ("ABC Bank Loan #22353"); and

   t. on or about August 18, 2015, ANTHONY KHOSHABE and BABAJAN KHOSHABE withdrew $250,000 from ABC Bank CD #16463, along with $21,269 from ABC Bank CD #16464, as well as a $743 early withdrawal fee, and used the withdrawn funds to pay off ABC Bank Loan #22353.

  7. It was further part of the conspiracy that defendants BABAJAN KHOSHABE and ANTHONY KHOSHABE did conceal and hide, and cause to be concealed and hidden, the purposes and the acts done in furtherance of the conspiracy;

   All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS THIRTEEN THROUGH TWENTY-FOUR

The SPECIAL AUGUST 2017 GRAND JURY further charges:

On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere,

BABAJAN KHOSHABE and
ANTHONY KHOSHABE,

defendants herein, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343.

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 13 | January 16, 2014 | Transfer of $500,000 from the BOA x5413 Account and the WF x8113 Account into ABC Bank CD #16463 and CD #16464 |
| 14 | January 17, 2014 | Transfer of $600,000 from the Chase x5672 Account to the Chase x7162 Account |
| 15 | March 10, 2014 | Transfer of $200,000 from the ABC Bank x5791 Account into ABC Bank CD #16513 |
| 16 | May 15, 2014 | Transfer of $295,000 proceeds of ABC Bank Loan #22164 to Title Company A for purchase of Skokie Property 2 |

| 17 | September 19, 2014 | Withdrawal of $14,000 via cashier's check from the Chase x7162 Account for purchase of diamond ring |
| 18 | October 2, 2014 | Transfer of $29,900 from the Chase x7162 Account to Individual A for purchase of vehicle |
| 19 | March 20, 2015 | Transfer of $256,257 from the Chase x7162 Account to Title Company B for purchase of Skokie Property 3 |
| 20 | July 9, 2015 | Withdrawal of $141,483 via cashier's check from the Chase x7162 Account to pay off mortgage balance |
| 21 | July 10, 2015 | Withdrawal of $33,000 via cashier's check from the Chase x7162 Account for vehicle purchase |
| 22 | July 14, 2015 | Deposit of $40,000 loan proceeds from ABC Bank Loan #22447 into the MB Financial x0508 Account |
| 23 | July 16, 2015 | Transfer of $270,000 proceeds of ABC Bank Loan #22353 |
| 24 | August 18, 2015 | Transfer of $270,509 from ABC Bank CD #16463 and CD #16464 to pay off ABC Bank Loan #22353 |

All in violation of Title 18, United States Code, Section 1957.

## **FORFEITURE ALLEGATION**

The SPECIAL AUGUST 2017 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Sections 1341, 1343, 1956(h), or 1957, as set forth in this Indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to:

    a.     a personal money judgment in the amount of approximately $4,829,000; and

    b.     the following specific property:

        i.     Certificate of Deposit no. 16463, issued by Austin Bank in Chicago, Illinois, on or about January 16, 2014, in the amount of $250,000;

        iv.     Certificate of Deposit no. 16464, issued by Austin Bank in Chicago, Illinois, on or about January 16, 2014, in the amount of $250,000;

        v.     Certificate of Deposit no. 16513, issued by Austin Bank in Chicago, Illinois, on or about March 10, 2014, in the amount of $200,000;

        vi.     the real property commonly known as 9715 Woods Drive, Unit 1101, Skokie, Illinois, legally described as follows:

28

UNIT 1101 AND PARKING SPACES P227 & P228 IN OPTIMA OLD ORCHARD WOODS ELM CONDOMINIUM, AS DELINEATED ON A PLAT OF SURVEY OF THE FOLLOWING DESCRIBED TRACT OF LAND: THAT PART OF LOT 2 (EXCEPT THAT PART DEDICATED FOR WOODS DRIVE) IN OLD ORCHARD WOODS SUBDIVISION OF PART OF THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 9, TOWNSHIP 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 12, 2004 AS DOCUMENT NUMBER 0422518103, WHICH PLAT OF SURVEY IS ATTACHED AS "EXHIBIT C" TO THE DECLARATION OF CONDOMINIUM RECORDED SEPTEMEBER 22, 2006 AS DOCUMENT NO. 0626531058, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, ALL IN COOK COUNTY, ILLINOIS.

PIN 10-00-304-035-1079, 10-09-304-035-1167, and 10-09-304-035-1168.

vii.   the real property commonly known as 9725 Woods Drive, Unit 1417, Skokie, Illinois, legally described as follows:

UNIT 1417 AND PARKING SPACE P426 IN OPTIMA OLD ORCHARD WOODS MAPLE CONDOMINIUM, AS DELINEATED ON A PLAT OF SURVEY OF THE FOLLOWING DESCRIBED TRACT OF LAND:

PART OF LOT 2 IN OLD ORCHARD WOODS SUBDIVISION OF PART OF THE EAST HALF OF THE SOUTHWEST QUARTER OF SECTION 9, TOWNSHIP 41 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, WHICH PLAT OF SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION OF CONDOMINIUM OWNERSHIP RECORDED OCTOBER 5, 2007 AS DOCUMENT NO. 0727815093, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, ALL IN COOK COUNTY, ILLINOIS.

PIN 10-00-304-042-1114 and 10-09-304-042-1029.

viii.   the real property commonly known as 6349 N. Knox Avenue, Chicago, Illinois, legally described as follows:

LOT I AND THE NORTH QUARTER OF LOT 2 IN FIRST ADDITION TO VALENTI'S SAUGANASH ESTATES, BEING A RESUBDIVISION OF PART OF LOTS 1,2,4 AND 5 IN THE ASSESSOR SUBDIVISION OF THE NORTH WEST FRACTIONAL QUARTER OF SECTION 3, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PIN 13-03-132-021.

3.   If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____
UNITED STATES ATTORNEY