IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 CR 515-3 |
| v. | ) | Judge John Z. Lee |
| | ) | |
| ANTHONY KHOSHABE | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ANTHONY KHOSHABE'S**
**MOTION FOR A JUDGMENT OF ACQUITTAL**

Defendant, ANTHONY KHOSHABE, by and through his attorneys, BREEN & PUGH and BLEGEN & GARVEY, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, moves this Court for a judgment of acquittal on Counts 1 through 8 and Counts 12 through 24 of the superseding indictment because the evidence presented in the Government's case-in-chief is insufficient to sustain convictions of Mr. Khoshabe on these charges. In support thereof, Defendant, through Counsel, shows to the Court the following:

  I.    **Wire and Mail Fraud**

Counts 1 through 8 charge Defendant with mail and wire fraud, in violation of 18 U.S.C. § 1341 and § 1343. To sustain convictions for mail or wire fraud the Government must prove, beyond a reasonable doubt, that: (1) the defendant knowingly devised or participated in a scheme to defraud; (2) the defendant did so with the intent to defraud; (3) the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and, (4) for purposes of carrying

1

out the scheme or attempting to do so, the defendant used or caused the use of the United States Mails, a private or commercial interstate carrier, or caused interstate wire communications to take place in the manner charged in the particular count. 18 U.S.C. § 1341 and § 1343.

Based on the evidence presented, no rational trier of fact could find the elements of mail or wire fraud beyond a reasonable doubt. Specifically, none of the evidence, even when considered in a light most favorable to the Government, proves that Defendant: (1) knowingly devised or participated in a scheme to defraud; (2) did so with the intent to defraud; (3) made or was aware of a materially false or fraudulent pretense, representation, or promise; or (4) used or cause the use of the mails or interstate wire communications.

Indeed, the Government's own evidence establishes that Defendant had no knowledge that Devon Street Investments ("DSI") was defrauding investors. Instead, it established that Defendant began working with DSI believing it was a legitimate company engaged in the purchasing of distressed properties or notes. Specifically, the evidence establishes that:

1. DSI was purported to be a real estate investment business in which his father was a partner;

2. Defendant invested in properties in the same manner as the other investors prior to him working with DSI. Defendant provided Mr. Murphy with two cashier's checks that indicated the address and PIN number of the properties, and subsequently began receiving what he believed were rent payments (Government Exhibit Blau 3B);

3. DSI worked with Thomas Murphy, a licensed attorney;

4. Thomas Murphy assisted Defendant in setting up Reliant Management (Government Exhibit Blau 8);

5. Francisco Cisneros, the individual who had previously been managing properties for DSI, was told that he would be working for Reliant Management performing the same duties, such as collecting rent and maintaining the properties (Tr. 268);

6. Defendant created a checklist or contract between himself and Mr. Cisneros detailing the work to be done at each property (Government Exhibit Cisneros 1);

7. Defendant created a log sheet for Mr. Cisneros to document the work performed at each property, and required Mr. Cisneros to turn those logs in at the end of the week in order to receive his paycheck (Defense Exhibit AK Cisneros Cross 1);

8. Mr. Cisneros submitted receipts to be reimbursed for supplies he used maintaining the properties (Tr. 348-349);

9. Mr. Cisneros sent Defendant photographs purporting to document the work he had performed at various properties (Defense Exhibits AK Cisneros Cross 2, AK Cisneros Cross 4, and AK Cisneros Cross 5);

10. Defendant received checks and money orders from Mr. Murphy and Mr. Rossini that appeared to be rent money received from each building's tenants (Government Exhibit Buckley 8A);

11. Defendant deposited what he believed was rent money into Reliant Management's bank account, sent each investor a check representing their monthly rents, and emailed each investor an invoice detailing the amount of rent collected each month (Government Exhibit Younan 4);

12. Defendant paid insurance premiums on the investor's properties (Government Exhibit Buckley 8A);

13. There is no evidence that Defendant ever pitched the investment scheme to potential investors;

14. Defendant submitted a complaint to the Securities and Exchange Commission reporting that Mr. Rossini convinced his father to raise money from family members for the purchase of distressed notes but had failed to provide any documentation. Further, the complaint

  named DSI and provided its address in Lincolnwood, Illinois (Government Exhibit Blau 6);

15. Defendant emailed Mr. Rossini, Mr. Murphy, and his father indicating he was separating himself from AD Investment Partners and would no longer serve as DSI's property manager because of their inability to produce documents he and other investors had requested (Government Exhibit Blau 12);

16. Defendant emailed Mr. Murphy's law firm indicating, his concerns that Mr. Murphy was having investors send checks made payable to Mr. Murphy directly to him at the law firm and was unable to provide any documentation to the investors (Government Exhibit Blau 12); and,

17. Defendant sent an email to Mr. Murphy inquiring into the status of his investments and for proof of the notes held by DSI (Government Exhibit Blau 11).

In *United States v. Rahseparian,* 231 F.3d 1257 (10th Cir. 2000), the Tenth Circuit reversed the District Court's denial of the defendant's motion for a judgement of acquittal finding that the evidence presented at trial was insufficient to sustain convictions for mail fraud and money laundering. *Rahseparian,* 231 F.3d at 1266-67. The Tenth Circuit reasoned that the only evidence regarding the defendant's knowledge that a telemarketing business was illegitimate was entirely circumstantial. *Id.* at 1262. The evidence at trial showed the defendant was the contact person for a mailbox used by the fraudulent business, he conducted the business' banking through his personal business account resulting in the commingling of funds, had daily conversations with an alleged co-schemer regarding incoming checks, and purchased telemarketing lead sheets with cashier's rather than a business check. *Id.* at 1263. The Court found that none of this evidence showed the defendant knew that the telemarketing business was a fraud,

4

and that "the defendant's participation in the illegal scheme was limited to acts that, by themselves, were innocent: doing the banking for his sons, who ran the fraudulent telemarketing scheme…and purchasing 'lead sheets' for them, a common and perfectly legal way for telemarketing business to identify potential customers." *United States v. Powell*, 576 F.3d 482, 493 (7th Cir. 2009), *citing Rahseparian*, 231 F.3d at 1263.

Similarly, none of evidence presented against Defendant in this case proves he knew DSI was engaged in fraudulent activity. Defendant's conduct was limited to acts that are perfectly innocent: he started a property management company; he hired Mr. Cisneros, who he believed had been doing property management for DSI in the past; he required Mr. Cisneros to submit documentation of his work in order to be paid; he managed what he believed was rental income from various properties and distributed the funds to investors with detailed invoices; and, he paid insurance premiums on the properties he believed were held by DSI. More importantly, and unlike *Rahseparian*, when Defendant became suspicious, he sent emails requesting documentation, alerted the Securities and Exchange Commission of his concerns, alerted Mr. Murphy's law firm of the same concerns, and ultimately ended his business relationship with DSI.

Moreover, every instance of alleged wire and mail fraud occurred after Defendant quit working with DSI. Defendant sent his email notifying Mr. Rossini, Mr. Murphy, and his father that he was quitting on May 24, 2012. *See*, Government

5

Exhibit Blau 12. All of the mailings and wire communications charged in the indictment were sent after both Defendant quit and alerted law enforcement.

## II. Money Laundering

Counts 12 through 24 charged Defendant with conspiracy to commit money laundering and money laundering, in violation of 18 U.S.C. § 1956(h) and § 1957. In order to be convicted of conspiracy to commit money laundering or money laundering, the Government must prove that the defendant knew the transaction involved criminally derived property. 18 U.S.C. § 1956(h) and § 1957. Of course, the only criminally derived property at issue here is the money generated by the DSI investments. As argued above, Defendant entered DSI's scheme unwittingly and had no knowledge that DSI was defrauding investors. Therefore, the Government has failed to prove Defendant knew the monetary transactions he engaged in involved funds derived from DSI's mail and wire fraud scheme.

## III. Conclusion

For all of the foregoing reasons, Defendant Anthony Khoshabe respectfully requests this Court enter a judgment of acquittal on all counts.

Respectfully submitted,

 s/ Patrick W. Blegen
**PATRICK W. BLEGEN**, One of the Attorneys for Defendant Anthony Khoshabe.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1424
Chicago, Illinois 60604
(312) 957-0100